## In re FITZHUGH HALL AMUSEMENT CO.

### In re RUDOLPH WURLITZER CO.

(Circuit Court of Appeals, Second Circuit. February 15, 1916.)

#### No. 147.

1. SALES ☞467—CONDITIONAL SALE—EFFECT.

A contract for the sale of a chattel, which provides that the title shall remain in the seller until the balance due on the purchase price is paid, does not give the seller a lien, but gives him the title.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1354, 1358–1364; Dec. Dig. ☞467.]

2. BANKRUPTCY ☞140(1)—PROPERTY PASSING TO TRUSTEE—CONDITIONAL SALE —ELECTION.

Where the seller of a chattel, who had reserved title until the balance of the purchase price was paid, permitted the sheriff to levy execution issued on his judgment for the balance on the chattel, and later made an agreement for payment, and instructed the sheriff to hold the execution, he waived his reserved title, and can rely only on his execution lien, which, under Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564, as amended by Act June 25, 1910, c. 412, § 12, 36 Stat. 842 (Comp. St. 1913, § 9651), was invalid against a trustee, where the petition was filed within four months after the levy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ☞140(1).]

Appeal from the District Court of the United States for the Western District of New York.

In the matter of the Fitzhugh Hall Amusement Company, bankrupt. From an order of the District Court, authorizing the trustee

to sell an organ claimed by the Rudolph Wurlitzer Company, free from liens (228 Fed. 169), the claimant appeals. Affirmed.

This cause comes here upon appeal from an order authorizing the trustee herein to sell an organ alleged to belong to the Rudolph Wurlitzer Company free from all liens of said company and to place the proceeds in a separate account to the credit of the trustee subject to further order of the court to await the outcome of an appropriate action to determine the validity of the Rudolph Wurlitzer Company's lien. The opinion below of Judge Thomas will be found in 228 Fed. 169.

Kirby & Millener, of Rochester, N. Y. (Isaac Adler, of Rochester, N. Y., of counsel), for appellant.

Albert H. Stearns, of Rochester, N. Y., for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. More than a year before bankruptcy the Amusement Company entered into a contract with one Kelley for the purchase of an organ. Kelley's rights under the contract were duly assigned to the Wurlitzer Company, which will be hereinafter treated as if it were the original party to the contract. The sale was a conditional one; the consideration was $10,000, payable $500 upon delivery and the balance in equal monthly payments, notes being given for each future installment. The contract provided that in case of default on any note, all should become due; also that in case of default the vendor might take possession and remove the instrument without legal process. It contained the provision:

"The title to said instrument will not pass until the purchase price or any judgment for the same is paid in full and shall remain your [vendor's] property until that time."

The purchaser being in default, the Wurlitzer Company brought suit on January 26, 1914, for the balance due, and judgment was entered therein against the bankrupt for $9,454.70 on February 18, 1914. Execution therefor was issued to the sheriff on the same day. The sheriff went at once to the premises of the Amusement Company and made a levy on everything there, "piano, organ, chairs, carpets, pictures, desk and safe." Bankrupt's manager then entered into negotiations with the company's attorneys and as a result one Arnold, who was interested in the bankrupt, paid $2,000 and it was agreed that the sheriff should not close the place up for 10 days; the attorneys who had issued the execution instructed him to hold the levy. The Amusement Company was adjudged a bankrupt in May, less than four months after the judgment, execution and levy. The Wurlitzer Company filed a claim for the balance due on the contract as a secured claim on the theory that the security was the title to the organ reserved under the conditional sale.

The order of the District Court now here for review merely authorized the trustee to sell the organ, which came into his possession because it was in the bankrupt's possession, free of lien. The proceeds were ordered to be held for further adjudication as to their disposi-

tion. Inasmuch as the only lien of which there is any suggestion in the case is that created against the bankrupt's property by judgment, levy, and execution, which lien was void under section 67f, because it originated within four months of bankruptcy, there seems to be no error in holding that the organ was free of lien. The District Judge, in his opinion (the idea is not found in the order), refers to this lien as valid, but as losing its preferential character in favor of the attaching creditor. What in the case at bar would be accomplished by such a holding we do not understand.

[1, 2] The case is greatly confused by the circumstance that every one, counsel, referee, and District Judge, treated the case as if the original contract created a lien. This is a mistake; the contract was not a chattel mortgage, but a conditional sale. We have no question of lien, but only a question of title. At the time the order was made was the title to the organ in the Wurlitzer Company or in the trustee as representative and successor in title of the bankrupt to whom the conditional sale was made? The amendment of 1910 which gives a trustee the rights of a creditor holding a lien cuts no figure, if the title to the organ was in the Wurlitzer Company. Undoubtedly the title remained in the vendor at the time the organ was delivered, although at any time thereafter the company could waive its rights to repossession and allow the title to become absolute. It did not exercise such election by taking notes for installments to come due; nor by suing and taking judgment for such installments when they came due under the terms of the contract, because the contract provided expressly that the title should not pass until such judgment was paid in full. Nor do we think the situation would be changed by the issue of a general execution; non constat but what the judgment might have been collected out of the vendor's property aside from the organ. If, however, the vendor instructed the sheriff to levy on the organ, or stood by and saw him levy on the organ as part of the vendee's property without advising him that the organ belonged to the vendor, we think such conduct would amount to an election to rely on the judgment and execution and to give up the right to retake the organ under claim of title in itself. There would be nothing surprising in making such an election, because had the vendor decided to retake the organ it would have been subject to the onerous provisions of article 4 of the Personal Property Act (Consol. Laws, c. 41).

The evidence fails to show that the sheriff was expressly instructed to levy on the organ; but it does appear that he levied on it, that the attorney for the vendor knew that he had done so and did not inform him that the organ did not belong to the vendee. On the contrary, when the $2,000 was paid by a ten-day note of Arnold and extension given to continue the exhibition in the Amusement Hall the sheriff was told by the vendor's attorney to hold the levy, which he knew included the organ. Of course the vendor could neither direct nor hold levy of an execution on its own property. On that day the title passed and in place of title the vendor had a lien under the execution, but that lien, arising within four months, was wiped out by bankruptcy.

The order is affirmed.